Charles D. RAGLAND, Commissioner of Revenues
*v.* ALLEN TRANSFORMER COMPANY

87-175                                    740 S.W.2d 133

Supreme Court of Arkansas
Opinion delivered November 23, 1987
[Rehearing denied December 21, 1987.]

*Timothy J. Leathers, Wayne Zakrzewski, Kelly S. Jennings, Ann Kell, Joe Morphew, Philip Raia,* and *Robert Jones,* by: *John H. Theis,* for appellant.

*Pryor, Barry, Smith & Karber,* by: *John D. Alford,* for appellee.

Tom Glaze, Justice. This appeal involves the appellant's assessment of a sales tax on repair services performed on electrical transformers by the appellee at its business location in Fort Smith, Arkansas. After exhausting its administrative remedies, appellee filed suit in chancery court, alleging the appellant's assessment was an illegal exaction. The chancellor upheld the appellant's sales tax assessment on the repairs performed for Arkansas customers, but disallowed as an illegal exaction the

assessment on repair services performed within the state on transformers owned by out-of-state customers. The chancellor also awarded appellee attorney's fees. Both parties appeal from the chancellor's decree.

The facts are undisputed. Appellee is in the business of repairing, rewinding and remanufacturing electrical transformers, and while all its repair services are performed in Arkansas, appellee's customers are both within and outside the state. In either case, appellee sends its own truck to pick up the customer's burned out transformer, takes the unit to appellee's business location in Fort Smith for the required repairs and, again by truck, returns the transformer to the customer. As a result of appellant's sales tax audit of appellee's records during the period of April 1977 through March 1983, appellee was assessed an additional tax, interest and penalty of $39,361.18.

Appellant first argues the chancellor erred in determining that no taxable sale occurred on services appellee rendered in the state for its out-of-state customers. In reaching his decision, the chancellor reasoned that before a taxable service can exist, Ark. Stat. Ann. § 84-1902(c) (Repl. 1980) requires that the transfer of title or possession of the customer's transformer must occur within Arkansas. Based upon this same reasoning, the chancellor upheld appellant's assessment of sales tax upon the repairs appellee performed for its Arkansas customers. Thus, the question posed by appellant's argument is whether the sales tax can be imposed on services performed on electrical devices when the repairs are performed in the state, but the transfer of possession of the device to appellee actually takes place outside the state. We hold it can, and, therefore, must reverse the trial court's holding to the contrary.

Arkansas imposes a three percent tax upon the gross proceeds or receipts derived from all sales listed in Ark. Stat. Ann. § 84-1903 (Repl. 1980 and Supp. 1985), and, under subsection (c)(3) of that statute, the tax is levied on, among other things, the service of alteration and repair of electrical appliances and devices. Under Ark. Stat. Ann. § 84-1902(c), the term "sale", in pertinent part, is defined to mean the transfer of either title or possession for a valuable consideration of tangible personal property, regardless of the manner, method, instrumen-

tality, or device by which such transfer is accomplished. Appellee's argument, adopted by the chancellor below, is that because appellee picked up and delivered the transformers owned by out-of-state customers at the customers' business locations, no sale, i.e. transfer of possession, occurred within the state pursuant to §§ 84-1902(c) and -1903(c) to make those transactions taxable. To support its argument, appellee cites the case of *Gaddy* v. *DLM, Inc.*, 271 Ark. 311, 609 S.W.2d 6 (1980), a case we find unpersuasive because it involved the sale of tangible personal property and did not concern a service, as is the situation here.

In considering the proper construction to be given §§ 84-1902(c) and -1903(c), as those provisions pertain to the assessment of taxes on services, it is this court's duty to look to the whole act and, as far as practicable, to reconcile the different provisions to make them consistent, harmonious and sensible. *Ragland* v. *Alpha Aviation, Inc.*, 285 Ark. 182, 686 S.W.2d 391 (1985). We must also decline an interpretation that results in absurdity or injustice, leads to contradiction or defeats the plain purpose of the law. *Id.*, 285 Ark. at 185; 686 S.W.2d at 392. Towards these ends, we first look at § 84-1902(c), the provision which defines "sale." In doing so, we find the last sentence of that subsection excludes the furnishing or rendering of services from the definition of sale. As a result, the general assembly obviously intended, under these provisions, that the transfer of title or possession requirement must occur in the sale of tangible personal property before the tax is imposed; it provided no such requirement when imposing the tax on services. Other reasons support this interpretation, as well.

For example, the general assembly, in three instances, has deemed it necessary to exempt from the gross receipts tax certain services performed in-state on out-of-state property. In 1981, it excluded from the tax the repair or maintenance of railroad parts, railroad cars and equipment brought into the state for such repair. *See* Ark. Stat. Ann. § 84-1903(c)(3) (Supp. 1985), as amended by Act 983 of 1981. That same year, the general assembly also provided that the gross receipts tax would not apply to in-state services performed on watches and clocks which are received by mail or common carrier from outside the state and which, after the service is performed, are returned in the same manner, or in the repairman's own conveyance, to points

outside the state. *See* Ark. Stat. Ann. § 84-1903.4 (Supp. 1985). And, finally, the general assembly in 1985, provided an exemption (until July 1, 1987) for in-state repair or refurbishing services performed on telephone instruments that are sent into this state, and, after such repairs or refurbishing, are shipped back to the state of origin. *See* Ark. Stat. Ann. § 84-1903.6 (Supp. 1985). Unquestionably, the general assembly, in providing for these special exemptions on specified equipment or devices brought into state for repairs, obviously understood and intended Arkansas's sales tax, levied under § 84-1903(c)(3), to cover services performed within the state for both in-state and out-of-state customers.

Appellant underscores another compelling reason why Arkansas's gross receipts law must be construed in this fashion by pointing to the absurdities that could result if that law were read to allow the imposition of tax on services only when a transfer of possession occurs within the state. To illustrate, under appellee's rationale and the trial court's holding, the repair of a television could be taxable only if the owner surrendered title to or possession of his set. Thus, if the repairman picks up the set and repairs it at the shop, the sales tax would apply; if he repaired it at the customer's house, no transfer would occur, so no tax would attach. The same rationale would extend to other type services or repairs, as well. In the same vein, we need only look to this court's decision in *Department of Finance and Administration* v. *Otis Elevator Co.*, 271 Ark. 442, 609 S.W.2d 41 (1980) wherein we upheld the state's assessment of sales tax on services performed on elevators, when, clearly, no transfer of title or possession occurred. We conclude, in harmonizing and reconciling our sales tax provisions dealing with services and repairs performed within the state, the appellant's assessment of a sales tax on services performed for both in-state and out-of-state customers of appellees was correct.

Next, we turn to appellee's arguments that Arkansas's Gross Receipts Act is ambiguous, vague and violates appellee's rights to due process and equal protection. Appellee, consistent with its earlier contention, argues that, at best, uncertainty exists under the act as to whether a sales tax should be assessed on transactions involving its out-of-state customers. Referring to *Wiseman* v. *Arkansas Utility Co.*, 191 Ark. 854, 88 S.W.2d 81 (1935), it

urges that a tax cannot be imposed except by express words indicating that purpose, and that any ambiguity in the act must be resolved in appellee's favor. Appellee further argues an earlier audit performed on its records in 1971 reflects no assessment on out-of-state transactions and it was provided no notice of appellant's later position to assess such transactions although the tax laws were the same at the time the 1971 audit and the one in issue here were performed.

■ In response to appellee's concerns, we simply cannot agree that § 84-1903(c)(3) is in any way vague in its levy of taxes upon the services provided by appellee. Even appellee concedes that the transformers are electrical devices covered under § 84-1903(c)(3) and, as such, the repairs of the transformers are subject to the sales tax. Contrary to appellee's assertion, we simply disagree that the tax law is vague in its levy of taxes on appellee's out-of-state customers. Nor do we agree that the appellant's prior audit could have reasonably misled appellee into the belief that its out-of-state transactions would not be assessed. We have carefully reviewed appellee's exhibit #5, which it argues reflects a tax was not assessed on five out-of-state customers; we find the five transactions to which appellee refers bear changes in each instance to reflect Arkansas addresses. In short, the exhibit provides no real insight concerning whether the transactions occurred in state or out.

■ Finally, appellee attacks the assessment as a violation of the interstate commerce clause, saying all the sales occurred outside the State of Arkansas, and to tax those transactions would have a chilling effect on its ability to do business with out-of-state customers. We find no merit in appellee's argument. In *Evco* v. *Jones*, 409 U.S. 91 (1972), the Supreme Court, citing its earlier holding in *Department of Treasury* v. *Ingram-Richardson Mfg. Co.*, 313 U.S. 252 (1941), reiterated the rule that a state may tax the proceeds from services performed in the taxing state, even though they are sold to purchasers in another state. The *Evco* decision was relied on by the Tennessee Supreme Court in its recent decision in *Le Tourneau Sales and Service, Inc.* v. *Olsen*, 691 S.E.2d 531 (Tenn. 1985). In rejecting there the same interstate commerce clause argument as is now made here, the Tennessee court upheld the imposition of sales taxes on services performed within the state when motors were shipped into

Tennessee, where they were rebuilt and then returned to the out-of-state customer. As was the situation in *Olsen*, the taxable event involved here is the rendering of services within the state, and a substantial connection with this state exists to justify the imposition of the sales tax on repair work performed by the appellee in Arkansas.

Consistent with the foregoing reasons, we reverse and remand this cause. In doing so, we need not reach appellant's challenge of the trial court's award of attorney's fees to the appellee as the prevailing party below, except to state that award, too, is reversed upon remand of this cause.